UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GERALD J. SILVA, | : | |
| Plaintiff, | : | CASE NO. 3:18-cv-1771 (MPS) |
| | : | |
| v. | : | |
| | : | |
| M. CANAROZZI, et al., | : | |
| Defendants. | : | APRIL 15, 2019 |
| | : | |

## INITIAL REVIEW ORDER

Plaintiff Gerald J. Silva, currently incarcerated at the Federal Correctional Institution in Danbury, Connecticut, filed this case under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*. 403 U.S. 388 (1971), against seven defendants: Counselor M. Canarozzi, Counselor G. Hornkohl, Case Manager J. Draper, Unit Manager S. Moore, Warden D.K. Williams, Regional Director Michael Carvajal, and Federal Bureau of Prisons Director Mark S. Inch. Silva contends that the defendants discriminated and retaliated against him, denied him due process, and defamed him. He seeks damages and injunctive relief from the defendants in their individual and official capacities. For the reasons set forth below, the complaint is DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).

**I.    Legal Standard**

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28

U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner pays the filing fee. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Here, Silva paid the filing fee.

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006). To plead a cognizable legal claim, however, a *pro se* plaintiff must meet the standard of facial plausibility. *See Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) ("[A] *pro se* complaint must state a plausible claim for relief.") (citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)).

## II.     Allegations in the Complaint

On February 27, 2018, defendant Canarozzi filed a false incident report stating that the plaintiff had installed a curtain on his bed. The curtain had been installed by another inmate on a bed that was not assigned to Silva. ECF No. 1, ¶ 1. Defendant Canarozzi falsely stated in the report that he previously had counseled the plaintiff twice about the curtain. *Id.*, ¶ 2. Silva

considers the report defamatory—"a permanent 'black mark' on [his] otherwise stellar prison record and personal reputation." *Id.*, ¶ 3.

Defendants Hornkohl and Draper reviewed the report with Silva the following day. He presented his evidence that the report was false. *Id.*, ¶ 4. Defendants Hornkohl and Draper did not agree with his arguments and sanctioned him with loss of commissary privileges. *Id.*, ¶ 6. Defendants Hornkohl and Draper did not investigate the charges. Silva contends that they were negligent and biased against him. *Id.*, ¶ 7.

Defendant Moore reviewed the incident report and sanctions without investigating. *Id.*, ¶ 9. She did not meet or communicate with the plaintiff before making her decision. *Id.*, ¶ 10. Silva exhausted his administrative remedies by appealing the disciplinary charge to the warden, Regional Office, and Central Office. *Id.*, ¶ 12.

Following this incident, "the administration" retaliated against the plaintiff. He was subjected to unnecessary and unwarranted urine screenings. One screening was conducted at 4:00 a.m. on June 14, 2018. The plaintiff was awakened from a deep sleep causing the return of "severe medical symptoms." *Id.*, ¶ 15. The plaintiff characterizes these actions as medical abuse in addition to retaliation. *Id.*, ¶ 16.

Although many inmates were hanging temporary partitions, including complete bed enclosures, when the incident report was filed and continue to do so, defendant Canarozzi did not discipline any other inmate. *Id.*, ¶ 17. Because another inmate continued to hang partitions near the plaintiff's bed, the plaintiff stopped using his bed for personal and medical purposes. *Id.*, ¶ 20. This interfered with the plaintiff's "self-care plans for chronic medical issues." *Id.*, ¶ 21.

**III.   Discussion**

### A. Money Damages

Plaintiff filed this action under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* permits suits against federal officials for certain constitutional violations in their individual capacities for money damages. S*ee FDIC v. Meyer*, 510 U.S. 471, 485-86 (1994) (*Bivens* authorized lawsuits for monetary damages against federal officials in their individual capacities only); *Caraveo v. U.S. Equal Emp't Opportunity Comm'n*, 96 F. App'x 738, 740 (2d Cir. 2004) ("Bivens actions, however, do not lie against . . . federal employees sued in their official capacities."). *Bivens* allows suits only against officials who personally commit conduct proscribed by the Constitution. Thus, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676.

The plaintiff alleges that defendant Canarozzi issued him a false disciplinary report, and the report was defamatory; defendants Hornkohl, Draper, and Moore negligently failed to investigate the matter; "the administration" retaliated against him by subjecting him to unwarranted urine screenings that disturbed his sleep; and defendant Canarozzi failed to issue disciplinary reports to other inmates for hanging partitions, thereby singling him out.

To date, the Supreme Court has recognized a *Bivens* remedy for three constitutional violations: (1) unreasonable searches and seizures under the Fourth Amendment, *Bivens*, 403 U.S. 388; gender discrimination in employment under the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979); and the imposition of cruel and unusual punishment under the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980). The Supreme Court has explained that "expanding the *Bivens* remedy is now a disfavored judicial activity,"

and it has therefore "consistently refused to extend *Bivens* to any new context or new category of defendants." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (citations omitted); *accord Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 75 (2001) (Scalia, J., concurring) ("*Bivens* is a relic of the heady days in which this Court assumed common-law powers to create causes of action—decreeing them to be 'implied' by the mere existence of a statutory or constitutional prohibition. . . . [W]e have abandoned that power to invent 'implications' in the statutory field. There is even greater reason to abandon it in the constitutional field, since an 'implication' imagined in the Constitution can presumably not even be repudiated by Congress.") (citations omitted). Indeed, the Supreme Court has not recognized a new *Bivens* remedy since 1980. "*Ziglar* also made it clear that the only recognized implied rights of action were the narrow situations presented in *Bivens*, *Davis*, and *Carlson*, and lower courts must scrutinize attempts to expand the Bivens remedy, even where courts had assumed the availability of such a remedy." *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 57 (E.D.N.Y. 2017), aff'd, 755 F. App'x 67 (2d Cir. 2018).

The plaintiff asserts constitutional claims and tort claims. His constitutional claims are based on violation of his Fifth Amendment right to due process and his First Amendment right to be free from retaliation. None of these claims has been recognized by the Supreme Court or the Second Circuit as a cognizable *Bivens* claim. *See, e.g.*, *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). Further, "the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Ziglar*, 137 S. Ct. at 1865. A federal prisoner may challenge the execution of his sentence, including prison disciplinary actions and prison conditions, by filing a petition for a

5

writ of habeas corpus pursuant to 28 U.S.C. § 2241. *Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008). ("This court has long interpreted § 2241 as applying to challenges to the execution of a federal sentence, including such matters as the administration of parole, prison disciplinary actions, prison transfers, type of detention and prison conditions.") (quotation marks and alterations omitted).[1] In light of this alternative avenue for relief and the Supreme Court's expressed reluctance to recognize new causes of action under *Bivens*, I decline to extend *Bivens* to encompass Silva's claims here. *See Ojo v. United States*, 2019 WL 1025225, at *7–*10 (E.D.N.Y. Mar. 4, 2019) (declining to imply a *Bivens* remedy for prisoner's equal protection claim challenging prison dental policy). Silva also asserts tort claims for negligence and defamation. Negligence is not cognizable in a *Bivens* action. *See Schweiker v. Chilicky,* 487 U.S. 412, 447 (1988) (holding that "in order to prevail in any *Bivens* action," a plaintiff "must . . . prove a deliberate abuse of governmental power rather than mere negligence"). Silva's claims under *Bivens* are therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Claims based on the negligent or wrongful acts or omissions of federal employees must be brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). *See* 28 U.S.C. § 2679(b)(1) (claim against the United States under the FTCA is exclusive remedy for tort claims against federal employee); *see also Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994) ("[A] claimant's exclusive remedy for non-constitutional torts by a government employee acting within the scope of his employment is a suit against the government under the FTCA." )

---

[1] "[H]abeas corpus does not provide for money damages." *Jenkins v. Haubert*, 179 F.3d 19, 24 (2d Cir. 1999).

(citations omitted). I decline to construe Silva's tort claims as filed under the FTCA. The FTCA has several jurisdictional requirements, including that a lawsuit cannot be filed unless the claim has been presented to the appropriate federal agency, here the Federal Bureau of Prisons. *See Cooke v. United States*, 918 F.3d 77 (2d Cir. 2019). As presented, the claim must include notification of the incident and a request for money damages in a sum certain. 28 C.F.R. § 14.2(a). Although Silva alleges that he "completed and exhausted . . . all governmental administrative remedies" by appealing the disciplinary finding, he has not attached copies of the remedies. I cannot determine whether the administrative appeals the Silva describes would satisfy the FTCA filing requirement. In addition, Silva does not indicate whether he has presented his First Amendment retaliation claim or his Due Process claims to the Bureau of Prisons in any form.

For the foregoing reasons, Silva's claims for money damages against the defendants in their individual and official capacities are DISMISSED.

### B. Injunctive Relief

In addition to money damages, Silva requests several forms of injunctive relief. Injunctive relief is not available in a *Bivens* action. *See Polanco v. U.S. Drug Enforcement Admin.*, 158 F.3d 647, 652 (2d Cir. 1998) (noting that *Bivens* action is "(by definition) a claim for money damages"). Nevertheless, "[i]f a pro se litigant pleads facts that would entitle him to relief, that petition should not be dismissed because the litigant did not correctly identify the statute or rule of law that provides the relief he seeks." *Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008). "A motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, including such matters as . . . prison disciplinary actions . . . and prison

conditions." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001).

Even assuming habeas relief is available, Silva's due process claims fail on the merits. Silva asserts that the defendants violated his right to due process by failing to investigate and reverse defendant Canarozzi's false disciplinary report. "In order to establish a violation of due process, a petitioner must demonstrate that he or she possessed a life, liberty or property interest, a government official deprived him of one of those interests, and the procedures provided prior to the deprivation of that interest were constitutionally inadequate or insufficient." *Anderson v. Williams*, No. 3:15CV1364 (VAB), 2017 WL 855795, at *7 (D. Conn. Mar. 3, 2017). "[A] prisoner has a liberty interest only if the deprivation is atypical and significant and the state has created the liberty interest by statute or regulation." *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000) (alterations omitted).

Silva alleges that the defendants placed a "black mark" in his record and deprived him of his commissary privileges without due process. The Second Circuit has held that a prisoner placed in administrative confinement after an alleged disciplinary infraction did not face an "atypical and significant" deprivation giving rise to a protected liberty interest where the administrative confinement lasted fewer than 101 days. *Sealey v. Giltner*, 197 F.3d 578, 589–90 (2d Cir. 1999) ("The conditions of the Auburn SHU are doubtless unpleasant and somewhat more severe than those of general population, but the degree of incremental harshness, endured for 101 days, is not an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.") (quotation marks omitted). Courts in this circuit have routinely held that that "temporary deprivations of privileges, such as commissary trips and telephone use, do not meet the standard of an atypical and significant hardship." *Pottinger v. Sanchez*, No. 3:15-cv-

1236 (VLB), 2016 WL 1254200, at *4 (D. Conn. Mar. 29, 2016) (collecting cases). Silva does not allege that he suffered any other concrete adverse consequence because of the false disciplinary report, nor does he not provide any basis to conclude that he has a protected interest in having a blemish-free record. As a result, Silva has not pled facts supporting an inference that he was deprived a protected property or liberty interest, and he has failed to state a claim for relief under the Due Process Clause.

Next, Silva contends that the prison "administration" under the supervision of defendant Williams retaliated against him for appealing the disciplinary report by waking him up at 4:00 a.m. for an unwarranted urine screening. "[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quotation marks omitted). Courts "approach prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012).

Even assuming Silva has stated a claim for First Amendment retaliation, the injunctive relief he requests is not available under § 2241. Federal prisoners may challenge the execution of their sentence, including the conditions of confinement, by seeking a writ of habeas corpus. The injunctive relief that Silva requests is not related to the conditions of his confinement. For example, he requests "letters of apology from all of the defendants individually," and an order

requiring the Bureau of Prisons to "replace the false incident report with copies of the [a]fore[]mentioned letters of apology in all systems and files." ECF No. 1 at 13, ¶¶ 1, 3. Silva does not contend that the presence of the disciplinary report in his file has had any material impact on the duration or conditions of his confinement. He does not request that the Court require the defendants to reinstate his commissary privileges—the only deprivation he articulates in his complaint arguably related to the conditions of confinement. The writ of habeas corpus is "an extraordinary remedy . . . [and] its use has been limited to cases of special urgency . . . ." *Hensley v. Mun. Court, San Jose Milpitas Judicial Dist., Santa Clara Cty., California*, 411 U.S. 345, 351, 93 S. Ct. 1571, 1575, 36 L. Ed. 2d 294 (1973). It is not available to remedy a subjective reputational harm without some connection between that harm and the execution of Silva's sentence.[2]

## IV. Conclusion

The complaint is dismissed without prejudice pursuant to 28 U.S.C. § 1915A and the Clerk is directed to close this case. Within **thirty days** of this order, Silva may file a motion to reopen together with an amended complaint in which he attempts to address the defects identified in this ruling or otherwise to plead a cognizable claim, including any claim for

---

[2] Silva also requests broader injunctive relief that appears unrelated to the factual allegations in his complaint. For example, he seeks "court appointed external monitoring and oversight" over the Bureau's petition process, "especially for those alleging retaliatory behaviors." ECF No. 1 at 13, ¶ 8. He does not allege that he ever filed a petition complaining of retaliatory behaviors. He also requests an order requiring the Bureau to "re-install the fixed privacy/sanitation partitions in the housing units." *Id.*, ¶ 10. He does not allege that he ever sought to install such a partition, and the crux of his complaint in this case is that he was falsely accused of doing so.

equitable relief under 28 U.S.C. § 2241.

      **SO ORDERED** this 15th day of April 2019 at Hartford, Connecticut.

                                      /s/
                          Michael P. Shea
                          United States District Judge